# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF MISSOURI
# EASTERN DIVISION

| | |
|---|---|
| ANDREA MARION, | ) |
| | ) |
|     Plaintiff, | ) |
| | ) |
| v. | )    Case No. 4:18CV2114 HEA |
| | ) |
| ANDREW M. SAUL,[1] | ) |
| Commissioner of Social Security, | ) |
| | ) |
|     Defendant. | ) |

## OPINION, MEMORANDUM AND ORDER

This matter is before the Court for judicial review of the final decision of the Commissioner of Social Security denying the application of Plaintiff for supplemental security income benefits under Title XVI of the Act, 42 U.S.C. §§ 1381-1385. For the reasons set forth below, the final decision of the Commissioner is affirmed.

## Background

Plaintiff originally filed her application on November 10, 2015 alleging disability due to degenerative disease and arthritis in the lumbar area, hearing loss

---

[1] The Court takes judicial notice that on June 4, 2019, Andrew M. Saul was confirmed as Commissioner of Social Security. *See* https://www.congress.gov/nomination/116th-congress/94. Pursuant to Federal Rule of Civil Procedure 25(d), Commissioner Saul is substituted for Nancy A. Berryhill as defendant in this action. No further action needs to be taken to continue this suit by reason of 42 U.S.C. § 405(g) (last sentence).

in both ears, and depression.  Plaintiff was 38 years old at the time of her amended alleged onset date of July 31, 2016.  Plaintiff's application was denied, and she requested a hearing before an Administrative Law Judge (ALJ).

On February 8, 2018, a hearing was held.  Following the hearing, an ALJ issued a decision on June 6, 2018 finding that Plaintiff was not disabled under the Act.  The Appeals Council denied her request for review on October 24, 2018.  Thus, the decision of the ALJ stands as the final decision of the Commissioner.

## **ALJ Hearing**

Plaintiff testified at the hearing that she was 39 years old at the time of the hearing.  She lived with her 12-year-old son and 4-year-old daughter in a rented mobile home.  She obtained an Associate's Degree in Business Management in 2014.  Plaintiff was previously employed as: an in-home babysitter for six to seven months, which ended due to neck and back issues; a screen printer for two to three months; a retail cashier for close to two years; a factory machine operator at various plastic molding companies for a couple of months at a time, each ending due to Plaintiff's mental state being such that she did not want to go into work; and a cashier at various convenience stores, one of which was for about three months.  Plaintiff testified that physical activity leads to back pain caused by a herniated disk, and that this pain causes periods of immobility which can be relieved for no more than a minute by shifting feet.  Plaintiff further testified that a pinched nerve

in her right leg causes a minute of shooting, paralyzing pain in the front of her leg when she stands up after sitting a long time. Plaintiff testified that injections into her tailbone had helped her such that she no longer needed to use a cane that had been prescribed to her for walking. She testified that Percocet, taken for pain, caused her to sometimes feel off-balance, dizzy, sleepy, and unable to concentrate. Plaintiff testified that she can sit for 20 to 30 minutes before her pinched nerve starts to hurt. At that point, she must walk around for ten minutes to alleviate the discomfort, although the first step she takes is "the most brutal." She further testified that her pain gets worse throughout the day, to the point that she doesn't want to do anything. At that point, she testified that she "deal[s] with it" by taking a pain pill.

Plaintiff also testified that she is being treated for bipolar disorder. She testified that daily "terrible mood swings" affect her ability to work. She also testified that these mood swings take place more in the evening and lead to her yelling at her children. Plaintiff testified that she does not socialize with females. Plaintiff testified that at the time of the hearing, she was in an "up" period of bipolar and that her "down" periods involve crying, feeling that everything is horrible, and feeling totally alone and unloved. During these periods, Plaintiff testified that she takes baths to stop crying. She further testified that she has thought about suicide. Plaintiff testified that she is seeing a psychiatrist who

3

prescribed Abilify and Celexa. She testified that these medications help and do not have side effects. Plaintiff testified that she does not like that her psychiatrist only asks a couple of questions at visits and does not spend time with her. She also testified that she doesn't "see the point in seeing a therapist" because she doesn't believe that talking helps.

Plaintiff testified that since July of 2016, she had gained sixty pounds because she "drink[s] too much Mountain Dew." She testified that although doctors had told her to lose weight, none had said that weight could be affecting her back pain.

Plaintiff testified that she has known she has hearing loss since she was five, but just began wearing hearing aids in March 2017. She testified that she now wears hearing aids all the time and that they help.

Plaintiff testified that she spends a typical day at home watching TV with her cats and dog. She gets her daughter up at 10:30, gets her to school at 11:55, and picks her up at 3:15. She testified that when her son gets home from school, he helps her with the chores she can't do, which is almost all chores. She testified that she tries to help her son with chores, but once she starts to hurt, she must stop. Plaintiff testified that she cannot bend over to reach into the washer or stand at the stove. She further testified that for meals, she usually buys frozen dinners that can be put in the oven or uses money from her father to go out to eat. Plaintiff testified

that she helps her daughter dress and bathe. She testified that she still drives. Plaintiff testified that she can walk a city block and can barely lift her four year-old daughter. She further testified that she plays games on her phone, reads, watches TV, sees her dad frequently, and sees her friends and sister infrequently. Plaintiff testified that on her doctors' suggestions she does stretches inside and walks in her neighborhood for about 20 minutes at a time when it is warm outside.

Delores Gonzalez, a vocational expert ("VE"), also testified. In response to the ALJ's hypothetical question, the VE testified that there are jobs in the national economy that a 39 year old person with Plaintiff's education and work history could perform, to wit: an addresser, a document preparer, and a tube operator. She is limited to work at the sedentary level with frequent handling, fingering, and feeling, with occasional stair and ramp climbing, occasional stooping, kneeling, crouching and crawling, with no climbing of ladders, ropes or scaffolds, no unprotected heights, no moving mechanical parts, no more than occasional exposure to pulmonary irritants, no more than moderate noise levels, and a sit/stand option twice per hour for five minutes of standing each time while remaining on task at work station.

## Decision of the ALJ

On June 6, 2018 the ALJ issued a decision finding that Plaintiff was not disabled. At Step One, the ALJ found that plaintiff had not performed substantial

gainful activity since September February 15, 2014, the original alleged onset date. At Step Two, the ALJ found that Plaintiff had the severe impairments of degenerative disc disease, hypothyroidism, morbid obesity, carpal tunnel syndrome (CTS), chronic obstructive pulmonary disease (COPD), bipolar disorder, anxiety, and hearing loss. However, the ALJ found Plaintiff did not have an impairment or combination of impairments listed in or medically equal to one contained in the Listings, 20 C.F.R. part 404, subpart P, appendix 1.

The ALJ determined that Plaintiff retained the
At Step Four, the ALJ found that Plaintiff was unable to perform any past relevant work. At Step Five, the ALJ found there were jobs that exist in significant numbers in the national economy that Plaintiff could perform, including work as an addresser, document preparer, and tube operator. The ALJ therefore concluded that Plaintiff was not "disabled" under the Act.

## Judicial Review Standard

The Court's role in reviewing the Commissioner's decision is to determine whether the decision "'complies with the relevant legal requirements and is supported by substantial evidence in the record as a whole.'" *Pate–Fires v. Astrue*, 564 F.3d 935, 942 (8th Cir.2009) (quoting *Ford v. Astrue*, 518 F.3d 979, 981 (8th Cir.2008)). "Substantial evidence is less than a preponderance but is enough that a reasonable mind would find it adequate to support the Commissioner's

conclusion." *Id.* In determining whether the evidence is substantial, the Court considers evidence that both supports and detracts from the Commissioner's decision. *Id.* As long as substantial evidence supports the decision, the Court may not reverse it merely because substantial evidence exists in the record that would support a contrary outcome or because the Court would have decided the case differently. *See Krogmeier v. Barnhart*, 294 F.3d 1019, 1022 (8th Cir. 2002).

Courts should disturb the administrative decision only if it falls outside the available "zone of choice" of conclusions that a reasonable fact finder could have reached. *Hacker v. Barnhart*, 459 F.3d 934, 936 (8th Cir.2006). The Eighth Circuit has repeatedly held that a court should "defer heavily to the findings and conclusions" of the Social Security Administration. *Hurd v. Astrue*, 621 F.3d 734, 738 (8th Cir. 2010); *Howard v. Massanari*, 255 F.3d 577, 581 (8th Cir. 2001).

## **Discussion**

Plaintiff argues (1) that the RFC is not supported by substantial evidence in the record in that the RFC assessment is conclusory and lacks rationale or reference to the supporting evidence, and (2) that the ALJ's credibility determination is flawed.

1. The RFC

Plaintiff argues that the ALJ did not provide an explanation as to how the medical evidence supported the RFC determination, as required by SSR 96-8p.

She argues that because none of her physicians assessed her ability to walk, stand, sit, lift, carry, or perform other work-related activities, the ALJ erred in determining the RFC as a layperson. Rather, Plaintiff claims, the ALJ should have further developed the record with expert medical evidence to determine the degree to which Plaintiff's impairments limited her ability to engage in work-related activities.

Plaintiff asserts that the ALJ's decision does not explain how various objective medical observations of Plaintiff's physical health, as well as the facts that Plaintiff has been prescribed narcotic pain medications and muscle relaxants throughout the relevant timeframe for pain and spasms, support the RFC. As to mental health, Plaintiff similarly argues that the ALJ's decision:

> . . . failed to explain how the findings from the treating psychiatric provider which included anxious and depressed mood, labile and blunted affect, impaired concentration, sleep problems, push of speech and decreased speech were incorporated in the RFC or how they are accommodated by the RFC. Although the decision acknowledges many of the mental status exam findings, there was no discussion as to how those findings affected plaintiff's ability to perform work functions. Impaired concentration, labile and/or blunted affect, anxious and/or depressed mood were documented on examinations at nearly every visit from 1/4/16 through 2/9/18. Medications were adjusted on 11 occasions in 2016 and 2017.

Specifically, Plaintiff claims that the ALJ did not adequately link the following information from her medical records to the RFC determination. First, that her pain management doctor, Dr. Padda, observed several positive straight leg

8

raising tests bilaterally, positive SI compression tests bilaterally, painful cervical and lumbar range of motion, decreased cervical range of motion, and shuffling gait between January and July 2017, as well as Dr. Padda's impression of a January 2017 EMG of the lower extremities that showed no response of the bilateral sensory nerves as possibly suggestive of early sensory neuropathy of the bilateral lower extremities (Dr. Padda also noted, however, that no response of the plantar nerves is considered a normal variant in a large percentage of the population), and Dr. Padda's impression of a May 2017 EMG of the upper extremities as consistent with median moderate nerve entrapment at both wrists and a negative needle EMG. Next, that consultative examiner Dr. Veronica Weston, M.D., observed absent pinprick in the lower extremities and decreased sensation in the right upper and lower extremity. Next, that the May 15, 2017 MRI of Plaintiff's cervical spine revealed straightening of the cervical spine, early disc desiccation throughout the cervical spine, diffuse disc protrusion with effacement of the thecal sac but patent spinal canal and neural foramina at C3-4, C4-5, and C6-7, and diffuse disc protrusion with effacement of the thecal sac with osteophytic complex at the lateral aspects and left neuroforaminal narrowing without significant impingement of existing nerve roots at C5-6, and that the June 3, 2016 lumbar MRI showed a herniated disc at L4-5 with canal stenosis produced by the disc abnormalities in

association with ligamentous thickening and facet joint hypertrophy as well as moderate right and mild left foraminal narrowing at L4-5.

A disability claimant's RFC is the most he or she can do despite his or her limitations. *Moore v. Astrue*, 572 F.3d 520, 523 (8th Cir. 2009). "[A]n RFC determination must be based on a claimant's ability 'to perform the requisite physical acts day in and day out, in the sometimes competitive and stressful conditions in which real people work in the real world.'" *McCoy v. Astrue*, 648 F.3d 605, 617 (8th Cir. 2011) (quoting *Coleman v. Astrue*, 498 F.3d 767, 770 (8th Cir. 2007)). An ALJ bears "the primary responsibility for determining a claimant's RFC" and may take into account a range of evidence, from personal observation to the claimant's statements regarding his or her daily activities, but "because RFC is a medical question, some medical evidence must support the determination of the claimant's RFC." *Vossen v. Astrue*, 612 F.3d 1011, 1016 (8th Cir. 2010). "In addition to medical evidence, when determining RFC the ALJ must consider the observations of treating doctors and others and the claimant's own description of her limitations." *Willcockson v. Astrue*, 540 F.3d 878, 880 (8th Cir.2008). "Even though the RFC assessment draws from medical sources for support, it is ultimately an administrative determination reserved to the Commissioner." *Cox v. Astrue*, 495 F.3d 614, 619 (citing 20 C.F.R. §§ 416.927(e)(2), 416.946); *see also House v. Astrue*, 500 F.3d 741, 745 (8th Cir. 2007).

An RFC determination "must include a narrative discussion describing how the evidence supports each conclusion, citing specific medical facts (e.g., laboratory findings) and nonmedical evidence (e.g., daily activities, observations)." *Gordon v. Astrue*, 801 F. Supp. 2d 846, 861 (E.D. Mo. 2011) (quotation omitted); *see also* SSR 96–8p 1996 WL 374184 (July 2, 1996). That being said, "SSR 96–8p does not require the ALJ to follow each RFC limitation with a list of specific evidence on which the ALJ relied." *Hilgart v. Colvin*, No. 6:12-03022-DGK-SSA, 2013 WL 2250877, at *4 (W.D. Mo. May 22, 2013) ("[S]uch a requirement is inconsistent with the standard of review here which mandates the court's decision be based on 'all of the relevant evidence.' *McKinney* [*v. Apfel*], 228 F.3d [860,] 863. Such a requirement would also result in ALJ's writing overly long decisions containing duplicative discussions of the same evidence in multiple sections.").

Here, the ALJ adequately explained the RFC's relationship to the medical evidence. The ALJ thoroughly summarized Plaintiff's medical and psychiatric records from the relevant period. The ALJ noted that Plaintiff has received routine treatments for her allegedly disabling pain and discussed how, by the Plaintiff's own statements and testimony, these treatments were successful in controlling Plaintiff's symptoms. "Impairments that are controllable or amenable to treatment do not support a finding of disability." *Davidson v. Astrue*, 578 F.3d 838, 846 (8th Cir. 2009). Plaintiff argues that the pain treatments afforded her no lasting relief

and that "ongoing injections and pain medications were necessary." However, it does not follow that the need for continuing treatment and medication necessitates a finding of disability. The ALJ found that Plaintiff's mental symptoms were similarly controllable, citing Plaintiff's psychiatric records deeming her stable when on medication. In addition, Plaintiff's testified that her psychiatric medication helped her.

In determining the RFC, the ALJ also properly considered the absence of any physician-imposed restrictions or limitations in Plaintiff's medical records. *See Bryant v. Colvin*, 861 F.3d 779, 784 (8th Cir. 2017) (citing *Brown v. Chater*, 87 F.3d 963, 965 (8th Cir. 1996) (noting that a "lack of significant medical restrictions [is] inconsistent with ... complaints of disabling pain")). Although no functional limitations or restrictions or discussion thereof accompany Plaintiff's medical records, the ALJ still formulated the RFC with significant limitations to account for objective medical findings, Plaintiff's credible subjective complaints of pain, objective psychiatric findings, and Plaintiff's subjective psychiatric complaints.

After assessing the evidence and making a proper credibility determination, as discussed below, the ALJ properly formulated Plaintiff's RFC. The RFC was adequately supported by substantial evidence on the record – both medical

evidence and other types. The ALJ's RFC determination, therefore, is not erroneous.

2. Credibility determination

Plaintiff asserts that the ALJ's finding regarding credibility are not supported by the evidence of record and that credibility was not fully assessed consistent with the factors set out by the Eighth Circuit in *Polaski v. Heckler*, 739 F.2d 1320 (1984). *Polaski* provides that in considering subjective complaints, the ALJ must fully consider all of the evidence presented, including the claimant's prior work record, and observations by third parties and treating examining physicians relating to such matters as:

(1) The claimant's daily activities;

(2) The subjective evidence of the duration, frequency, and intensity of the claimant's pain;

(3) Any precipitating or aggravating factors;

(4) The dosage, effectiveness, and side effects of any medication; and

(5) The claimant's functional restrictions. 739 F.2d at 1322. It is not enough that the record contains inconsistencies; the ALJ is required to specifically express that he or she considered all of the evidence. *Id.* The ALJ, however, "need not explicitly discuss each *Polaski* factor." *Strongson v. Barnhart*, 361 F.3d 1066, 1072 (8th Cir. 2004). The ALJ need only acknowledge and consider those

factors. *Id.* Although credibility determinations are primarily for the ALJ and not the court, the ALJ's credibility assessment must be based on substantial evidence. *Rautio v. Bowen*, 862 F.2d 176, 179 (8th Cir. 1988). The burden of persuasion to prove disability and demonstrate RFC remains on the claimant. *See Steed v. Astrue*, 524 F.3d 872, 876 (8th Cir. 2008).

Here, the objective evidence failed to support Plaintiff's claims of disabling pain and mental health symptoms. Plaintiff lived alone with her two minor children as their sole caretaker. She was able to bathe herself and her daughter, watch television, drive her daughter to and from school, fold laundry, and play phone games. The ALJ properly considered this evidence in assessing and analyzing the claim made by Plaintiff. *Reece v. Colvin,* 834 F.3d 904, 910 (8th Cir. 2016) ("Evidence of daily activities that are inconsistent with allegations of disabling pain may be considered in judging the credibility of such complaints."); *Wright v. Colvin*, 789 F.3d 847, 854 (8th Cir. 2015) ("Wright himself admits to engaging in daily activities that this court has previously found inconsistent with disabling pain, such as driving, shopping, bathing, and cooking."). Moreover, as discussed in the previous section, the lack of physician-imposed restrictions or limitations Plaintiff's medical records is inconsistent with complaints of disabling pain. *See Bryant*, 861 F.3d at 784 (8th Cir. 2017) (citing *Brown*, 87 F.3d at 965 (8th Cir. 1996) (a "lack of significant medical restrictions [is] inconsistent with ...

complaints of disabling pain")).  The ALJ also noted that the suggestions of Plaintiff's pain management doctor that Plaintiff engage in up to 30 minutes of walking were at odds with Plaintiff's self-reported extreme physical limitations.

The ALJ also considered Plaintiff's subjective claims of disabling pain in her benefits application and testimony versus her subjective statements to physicians about her pain symptoms.  The medical records reflect that throughout 2017, Plaintiff regularly reportedly markedly improved pain after pain management treatments including radiofrequency ablation and medial branch block and facet joint injections.  She also reported that the treatments allowed her to perform tasks that were previously impossible due to pain.  As for Plaintiff's testimony that Percocet caused balance problems, dizziness, drowsiness, and inability to concentrate, the ALJ noted that Plaintiff's medical records contained no such complaints about side effects.

The ALJ also considered Plaintiff's refusal to seek counseling or therapy when referred by her psychiatrist, in spite of her allegedly disabling mental disorder.  "A failure to follow a recommended course of treatment also weighs against a claimant's credibility."  *Guilliams v. Barnhart*, 393 F.3d 798, 802 (8th Cir. 2005).  The medical records also reflect that Plaintiff was counseled by physicians about losing weight, although Plaintiff testified otherwise.

Based on the record as a whole, the ALJ did not err in assessing the credibility of Plaintiff's subjective complaints or in making a credibility determination. The ALJ appropriately assessed Plaintiff's subjective complaints in conjunction with the medical records and considering the *Polaski* factors. The ALJ's finding that Plaintiff's subjective complaints were not fully credible is supported by substantial evidence and not reversible error.

## Conclusion

Based upon the foregoing, the ALJ's decision is based upon substantial evidence in the record.

Accordingly,

**IT IS HEREBY ORDERED** that the decision of the Commissioner is **AFFIRMED**.

A separate Judgment in accordance with this Opinion, Memorandum and Order is entered this same date.

Dated this 28th day of January, 2020.

_____
HENRY EDWARD AUTREY
UNITED STATES DISTRICT JUDGE